UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dennis Jackson, | |
| Plaintiff, | Case No. 22 C 4337 |
| v. | Honorable Jorge L. Alonso |
| City of Chicago, *et al.*, | |
| Defendants. | |

## Memorandum Opinion and Order

Defendants have moved for summary judgment as to all claims brought against them by Plaintiff Dennis Jackson. (ECF No. 71.) For the reasons below, the Court grants the motion as to Defendants Patrick Boyle, Jennifer Burmistrz, Matthew Evans, John Foertsch, Michael Higgins, Gerald Lau, and Jeffrey Lawson and as to Jackson's § 1983 malicious-prosecution claim against Efrain Carreno and Edward Garcia under the Fourteenth Amendment, but denies the motion as to Jackson's § 1983 malicious-prosecution claim against Carreno and Garcia under the Fourth Amendment and as to Jackson's Illinois state-law malicious-prosecution claim against the City of Chicago.

### Background[1]

### I. Factual background

The relevant material facts are largely undisputed, and the Court views any factual disputes and the evidence in the light most favorable to Jackson. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020).

---

[1] The Court particularly cites Jackson's response to Defendants' statement of facts (ECF No. 75) and Defendants' response to Jackson's statement of additional facts (ECF No. 81), where both the asserted facts and the opposing party's responses are set forth in one document.

1

a. **November 6, 2017 arrest**

On November 6, 2017, Chicago police officers Efrain Carreno and Edward Garcia informed their sergeant, Patrick Boyle, that they would conduct a narcotics investigation near the 300 block of East 120th Place in Chicago. (ECF No. 75 ¶ 12.) Officers Jennifer Burmistrz, Matthew Evans, John Foertsch, Michael Higgins, Gerald Lau, and Jeffrey Lawson agreed to help with the investigation. (*Id.* ¶ 13.) To conduct the investigation, Carreno and Garcia set up surveillance across the street from 313 East 120th Place; the other officers were nearby as the enforcement team and backup and were reachable via radio. (*Id.* 75 ¶¶ 16, 20; ECF No. 81 ¶ 1.)

That evening, Jackson and another person, James McIntyre, were in Jackson's parked vehicle outside the home of Jackson's grandmother located at 309 East 120th Place, near where Carreno, Garcia, and the other officers were conducting a narcotics investigation. (ECF No. 75 ¶ 5.)

What happened next is disputed—Defendants claim that Carreno and Garcia saw Jackson and McIntyre carry out multiple drug deals, including one with someone named Nate Johnson; Jackson and McIntyre deny that this happened and say instead that Jackson and McIntyre had waited in the car before Jackson could drive McIntyre home. (*See* ECF No. 75 ¶¶ 29–35; ECF No. 81 ¶¶ 2–8, 16.) At any rate, Carreno radioed the other officers to stop Johnson, which Evans and Lau did. (ECF No. 75 ¶¶ 36–37.) During a search of Johnson's vehicle, Lau found suspected heroin—though Jackson and McIntyre were allegedly dealing crack cocaine—and the officers placed Johnson in custody. (*Id.* ¶¶ 38–41; ECF No. 71 ¶¶ 17–18.)

After this, Carreno relocated to behind Jackson's grandmother's house—he and Garcia claim to have seen McIntyre go from Jackson's parked vehicle there to a different vehicle that was parked behind the residence to retrieve something three times during their surveillance

(Jackson and McIntyre deny this and claim that McIntyre never left Jackson's car or went behind the residence). (ECF No. 75 ¶¶ 29, 43–45.) Garcia then relocated to the rear of the residence and (disputedly) claims to have seen McIntyre do this again. (*Id.* ¶¶ 47–48.)

Carreno and Garcia radioed the enforcement team to detain Jackson and McIntyre, which they did shortly after approaching Jackson's vehicle. (*Id.* ¶¶ 49–55.) Carreno and Garcia went to the vehicle that was parked behind the residence and saw suspected drugs inside. (*Id.* ¶ 56.) While Garcia went to the front of the residence to tell the enforcement officers about this, Carreno opened the vehicle's unlocked door and recovered two bags containing suspected drugs. (*Id.* ¶¶ 57–59.)

Jackson and McIntyre were arrested and taken to a police station.[2] (*Id.* ¶ 63.) Carreno prepared an Original Case Incident Report, and Garcia prepared and signed the arrest report; both documents stated that Carreno and Garcia had observed Jackson and McIntyre engaging in drug deals from Jackson's car, including with Johnson, as Defendants now claim. (ECF No. 81 ¶¶ 9–15.) Garcia completed and signed a Complaint for Preliminary Examination, which was Jackson's criminal charging document and did not require prosecutor approval. (ECF No. 74-5; ECF No. 81 ¶¶ 20–22.) Jackson remained in custody at the police station overnight. (ECF No. 81 ¶ 23.)

### b. November 7, 2017 bond hearing

The next day, on November 7, 2017, the criminal complaint against Jackson was filed in the Circuit Court of Cook County and Jackson was taken to a courthouse, appeared before a judge, received an I-Bond (a personal-recognizance bond), and then was released later that day. (ECF No. 74-5; ECF No. 75 ¶ 64; ECF No. 81 ¶ 24–27.) Jackson's bond conditions included that

---

[2] Jackson maintains that the officers planted the drugs on him. (*Id.* ¶ 69.)

he had to reach out to a pretrial officer, could not leave Illinois without permission, had to make regular court appearances, and would be taken into custody if he failed to comply. (ECF No. 75 ¶ 64.) Plaintiff was arraigned on December 19, 2017. (*Id.* ¶ 65.)

    c. **April 2018 charges and detention**

On April 14, 2018, Jackson was arrested for allegedly possessing a stolen vehicle. (ECF No. 81 ¶ 28.) In part due to Jackson's already-pending drug charge, Jackson was jailed at the Cook County Jail on April 15, 2018. (*Id.* ¶ 29.) As a further result of the new charges, Jackson's bond in the drug case was revoked on April 16, 2018. (*Id.* ¶ 30.) The charges against Jackson for possession of a stolen vehicle were dismissed for lack of probable cause on April 20, 2018, but Jackson remained in custody until April 23, 2018, when his bond in the drug case was reinstated and he was released. (*Id.* ¶¶ 31–34, 36.)

    d. **September 2021 trial**

A bench trial in Jackson's drug case was held on September 2, 2021. (*Id.* ¶ 37.) Following the government's presentation of evidence, which included Carreno's testimony, Jackson was found not guilty. (ECF No. 75 ¶ 67; ECF No. 81 ¶¶ 37–38.)

**II.**     **Procedural History**

Jackson has sued the individual Defendants—Carreno, Garcia, and the other officers—for "federal malicious prosecution" under 42 U.S.C. § 1983 for allegedly depriving him of his rights under the Fourth and Fourteen Amendments and sued the City of Chicago for malicious prosecution under Illinois state law. (*See* Compl., ECF No. 1.) Following discovery, Defendants filed a motion for summary judgment as to all claims and defendants, which has been fully briefed. Jackson does not oppose summary judgment as to Defendants Boyle, Burmistrz, Evans, Foertsch, Higgins, Lau, and Lawson, so the Court grants summary judgment as to those

defendants, but he opposes summary judgment as to Defendants Carreno, Garcia, and the City of Chicago.

## Legal Standard

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## Discussion

The Court considers Defendants' motion for summary judgment first as to Jackson's federal § 1983 malicious-prosecution claim against Carreno and Garcia, then as to his Illinois state-law malicious-prosecution claim against the City of Chicago.

### I. Federal § 1983 malicious-prosecution claim against Carreno and Garcia

First, Jackson brings a federal malicious-prosecution claim against Carreno and Garcia under § 1983 and both the Fourth and Fourteenth Amendments. Section 1983 "provides a method for vindicating federal rights elsewhere conferred," including under the Fourth and Fourteenth Amendments as Jackson alleges. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The Court thus considers summary judgment as to Jackson's claim under each amendment.

#### a. Fourth Amendment

"The Fourth Amendment protects the right of the people to be secure in their persons against unreasonable seizures." *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (cleaned up). Among other things, it "prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). A claim under § 1983 and the Fourth Amendment for malicious prosecution requires a plaintiff to show "that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024). More specifically, it requires that criminal proceedings (1) were instituted without probable cause and (2) for a malicious motive; (3) ended without a conviction; and (4) resulted in the plaintiff's seizure by government officials. *See Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024) (citing *Thompson v. Clark*, 596 U.S. 36, 44, 49 (2022)). A seizure happens "when the officer, by means of physical force or show of authority, has in some way

restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). This can happen "when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.*

Here, the parties dispute only whether Jackson was seized to support his federal claim—whether during his initial arrest and detention before his release on bond in November 2017, or when his bond was revoked and he was detained for several days in April 2018. Defendants can succeed in dismissing Jackson's Fourth Amendment claim only if there is no genuine dispute of fact that Jackson did not have a qualifying seizure. The Court addresses each purported seizure below and concludes that Jackson's time in custody in April 2018 qualifies as a seizure, though his initial arrest and detention does not.

### i. Jackson's initial arrest and detention

Jackson first claims that the time he was detained following his arrest, including while he waited several hours to be released after appearing in court and being ordered released on bond, supports his federal claim. But though Jackson's initial arrest and detention constituted a seizure, it was not a seizure *made pursuant to legal process* and thus cannot support his claim. Section 1983 claims under the Fourth Amendment for malicious prosecutions require that seizures be made pursuant to legal process. *See, e.g.*, *Chiaverini*, 602 U.S. at 558 ("[A] Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure[.]"); *Thompson v. Clark*, 596 U.S. 36, 42 (2022) (describing the claim "as a claim for unreasonable seizure pursuant to legal process"); *Dorgay v. Reif*, No. 23-3058, 2024 WL 3023193, at *4 (7th Cir. June 17, 2024) ("[U]nder federal law, Dorgay had to plausibly allege that the malicious prosecution resulted in a seizure." (cleaned up)). Before legal process is instituted, a pretrial seizure instead constitutes a false arrest or false imprisonment—the

institution of legal process thus transforms a Fourth Amendment challenge to pretrial detention without probable cause from a false-imprisonment claim to a malicious-prosecution claim. *See Wallace v. Kato*, 549 U.S. 384, 389–90 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* . . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution[.]" (cleaned up)); *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) ("[A] false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges." (citing *Wallace*)).

To be clear, and as Jackson argues, a claim for unlawful pretrial detention is cognizable under the Fourth Amendment regardless of whether the seizure was made pursuant to legal process or before legal process was instituted. *See Manuel v. City of Joliet*, 580 U.S. 357, 368 (2017) ("Manuel stated a Fourth Amendment [pretrial-detention] claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention."). But the determination of whether a Fourth Amendment pretrial-detention claim is more specifically a false imprisonment claim (related to a pre-legal-process seizure), a malicious-prosecution claim (related to a post-legal-process seizure), or both, matters—it determines when the two-year statute of limitations begins to run. *See Lewis*, 914 F.3d at 478 ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years."). For a false-imprisonment claim, the statute of limitations begins to run when a person is released or begins to be held pursuant to legal process; for a malicious-prosecution claim, it begins when the person is found not guilty. *Tobey*, 890 F.3d at 645; *Smith v. City of Chicago*, No. 19-2725, 2022 WL 2752603, at *1 (7th Cir. July 14, 2022)

8

("After *Thompson*, a Fourth Amendment claim for malicious prosecution accrues when the underlying criminal prosecution is terminated without a conviction."). That certainly matters in this case—Jackson's case was filed in 2022, more than two years after his detentions in 2017 and 2018 but less than two years after he was found not guilty in 2021. Therefore, a malicious-prosecution claim would be timely but a false-imprisonment claim wouldn't be. Jackson apparently recognizes this because he limits his Fourth Amendment claim to one for malicious prosecution and confirms that he is not bringing a false-imprisonment claim. (Compl. ¶ 7, ECF No. 1.)

Accordingly, Jackson's initial arrest and detention until he was released on bond cannot support a Fourth Amendment malicious-prosecution claim unless it resulted from legal process. It did not. There was no arrest warrant to support Jackson's seizure, and his legal proceedings did not start until November 7, 2017—the day his criminal complaint was filed, he appeared before a judge, and was released on bond.[3] *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("In Illinois, criminal proceedings are commenced by the filing of a complaint, an

---

[3] To the extent Jackson argues that the conditions of his bond constituted a seizure, that argument fails—there is no evidence that Jackson's conditions that he report to pretrial services, not leave Illinois, and attend court went beyond routine conditions and sufficiently restrained his liberty so as to constitute a seizure. *See Smith v. City of Chicago*, 3 F.4th 332, 342 (7th Cir. 2021) ("[A]ny challenged condition must fall within the traditionally-defined scope of what characterizes a Fourth Amendment seizure. Smith's requirements that he appear in court and request permission before travel . . . do not fall within that definition."), *vacated on other grounds*, *Smith v. City of Chicago*, 142 S. Ct. 1665 (2022); *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016–17 (7th Cir. 2019) (contemplating "the possibility that pretrial release might be construed as a 'seizure' for Fourth Amendment purposes if the conditions of that pretrial release impose significant restrictions on liberty" and expressing "misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a 'seizure' for Fourth Amendment purposes"); *Artman v. Gualandri*, No. 20 C 4501, 2021 WL 2254961, at *4 (N.D. Ill. June 3, 2021) (stating that bond conditions requiring a defendant to appear in court, not violate any state law, and post a security "appear to fall into the category of routine conditions that are insufficient to substantiate a Fourth Amendment claim").

indictment, or an information."); 725 ILL. COMP. STAT. 5/111-1 (2024). And on that day, Jackson's legal proceedings included an order for him to be *released*, not seized. Thus, Jackson's pre-release detention did not constitute a seizure made pursuant to legal process and cannot support a § 1983 malicious-prosecution claim under the Fourth Amendment.

Jackson points to another case in this District in which an overnight detention between the arrest and the release on bond the next day was held to constitute a qualifying seizure to support a § 1983 malicious-prosecution claim under the Fourth Amendment. *See Wilson v. Smith*, No. 22 C 04413, 2024 WL 4753670, at *7 (N.D. Ill. Nov. 12, 2024). But in that case the parties had not squarely addressed the issue of whether the seizure was made pursuant to legal proceedings, the judge did not address it, and, unlike in the present case, the charges were approved by a prosecutor before the plaintiff was seized, which somewhat suggested that a legal process had been instituted. *See id.* at *6–7; *see also Wilson v. Smith*, No. 22 C 04413, ECF No. 41 at 8–9 (N.D. Ill. Sept. 25, 2023) (plaintiff characterizing his seizure as "pursuant to ASA Delaney's approval of felony arson charges" and "as a result of the implementation of false charges"). At any rate, the *Wilson* decision does not bind this Court. The Court concludes that Jackson's initial pre-release arrest and detention does not support his § 1983 malicious-prosecution claim under the Fourth Amendment because the seizure at that time was not pursuant to legal process.

### ii. Jackson's April 2018 revocation of bond and detention

The parties also dispute whether Jackson was seized pursuant to legal process in his drug case when his bond was revoked and he was taken into custody in April 2018 following his arrest for allegedly possessing a stolen vehicle. Defendants argue that even though this confinement included his bond being revoked in the drug case and continued for three days after

10

the charges in the stolen-vehicle case were dropped, the seizure was caused by the new charge, not by the drug prosecution instituted by Defendants, and so does not qualify.

The Court disagrees. Though the intervening stolen-vehicle case may have been the triggering event for Jackson's bond in the drug case being revoked, the revocation of his bond was done in the drug case itself—and thus he was taken into custody, at least in part, pursuant to the legal process of his drug case. Furthermore, after Jackson's stolen vehicle case was dismissed for lack of probable cause on April 20, 2018, Jackson remained in custody based on the order entered in his drug case until his bond was reinstated on April 23, 2018. Thus, for three days, Jackson was seized solely pursuant to the legal process in his drug case, completing his federal claim of malicious prosecution against Carreno and Garcia. The Court therefore denies Defendant's motion for summary judgment as to Jackson's § 1983 malicious-prosecution claim under the Fourth Amendment based on his April 2018 seizure.

### b. Fourteenth Amendment

Jackson's federal malicious-prosecution claim rests not only on the Fourth Amendment but also on the Due Process Clause of the Fourteenth Amendment. Defendants argue that the Supreme Court and Seventh Circuit have foreclosed claims related to pretrial detention brought under the Fourteenth Amendment. Jackson acknowledges this but briefly claims that an intervening Supreme Court decision has opened the door for Fourteenth Amendment claims and wishes to preserve the issue for appeal. The Court agrees with Defendants and concludes that Jackson's Fourteenth Amendment claim is foreclosed under current precedent. *See Lewis*, 914 F.3d at 478 ("It's now clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment."); *see also Manuel*, 580 U.S. at 367 ("If the complaint is that a form

of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").

## II. Illinois malicious-prosecution claim

The Court next turns to Jackson's state-law claim against the City of Chicago for malicious prosecution. A malicious-prosecution claim under Illinois law requires "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238, 1242 (1996)). Defendants initially argue that Jackson cannot prove that Carreno or Garcia commenced or continued a criminal prosecution, or that they acted with malice, but do not develop this or address Jackson's counterarguments in their reply brief. They therefore waive "any objections not obvious to the court to specific points urged by" Jackson. *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994).

In any event, the Court disagrees with Defendants on both elements. First, Garcia signed the criminal complaint against Jackson, and he and Carreno provided the core evidence on which Jackson's criminal proceedings were based. This meets the first element of an Illinois malicious-prosecution claim. *See Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 949 (N.D. Ill. 2014) ("Police officers may be liable for malicious prosecution if they either signed a criminal complaint or played a significant role in causing the prosecution of the plaintiff[.]" (quoting *Logan*, 246 F.3d at 922)); *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 929 (N.D. Ill. 2013) (finding that officers commenced or continued a prosecution where they signed police reports, signed the criminal complaint, and attempted to testify at trial).

12

Second, Jackson has offered enough at this stage to support the malice element, which requires "the initiation of a prosecution for an improper motive"—that is, for "any reason other than to bring the responsible party to justice." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 141, 183 N.E.3d 767. There is no dispute that Jackson can show that there was no probable cause against him. From that, and taking the evidence in Jackson's favor at this stage, a jury could infer malice based on circumstantial evidence that Carreno and Garcia manufactured evidence during their surveillance and investigation on November 6, 2017. *See id.* ("The element of malice may be inferred from a lack of probable cause when the circumstances are inconsistent with good faith by the prosecutorial team and lack of probable cause has been clearly proved. . . . [C]ircumstantial evidence which would support an inference of malice is sufficient." (cleaned up)). The Court therefore denies Defendants' motion for summary judgment as to Jackson's Illinois malicious-prosecution claim against the City of Chicago.

## Conclusion

The Court grants in part and denies in part Defendants' motion for summary judgment (ECF No. 71). The Court dismisses Jackson's § 1983 malicious-prosecution claim under the Fourteenth Amendment and dismisses Boyle, Burmistrz, Evans, Foertsch, Higgins, Lau, and Lawson as defendants, but declines to dismiss Jackson's § 1983 malicious-prosecution claim

under the Fourth Amendment against Defendants Carreno and Garcia and his state-law malicious-prosecution claim against the City of Chicago.

Within 21 days after the entry of this order, the parties shall file a joint status report, including a proposed schedule for any remaining pretrial matters such as the joint proposed pretrial order and motions in limine and for trial.

**SO ORDERED.**  ENTERED: **December 31, 2024**

**HON. JORGE ALONSO**
**United States District Judge**